UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| MARY KALLMEYER, *et al.*, | ) | CASE NO. 5:17-cv-594 |
|---|---|---|
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| KOHL'S DEPARTMENT STORES, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for summary judgment filed by defendant Kohl's Department Stores, Inc. ("Kohl's") (Doc. No. 21 ["MSJ"]). Plaintiffs Mary Kallmeyer ("Mary") and Gene Kallmeyer ("Gene") (collectively the "Kallmeyers") oppose the motion (Doc. No. 24-1 ["Opp'n"]), and Kohl's has filed a reply. (Doc. No. 26 ["Reply"].) For the reasons discussed below, the motion is **GRANTED**.

I. **BACKGROUND**

The parties agree on the facts that give rise to this slip and fall case. On February 16, 2015, at approximately 5:00 pm, Mary was shopping at a Kohl's retail store in Stow, Ohio. (Doc. No. 24-1 (Deposition of Mary Kallmeyer[1] ["M. Kallmeyer Dep."]) at 346[2], 358-59[3], 362-3.) A native of the Akron, Ohio area, Mary was no stranger to northeast Ohio winters. (*Id.* at 370.) At

---

[1] The transcript from Mary's deposition also appears on the docket at Doc. No. 19-1. For the sake of clarity and consistency, the Court shall reference the transcript appended to the Kallmeyers' opposition brief.

[2] Unless otherwise noted, all page number references are to the page identification number generated by the Court's electronic docketing system.

[3] It appears from the transcript from Mary's deposition that a portion of a previously recorded interview between Mary and a Kohl's employee was played during the deposition. (*See id.* at 358.)

her deposition, Mary testified that it had been snowing prior to her visit to Kohl's, and she estimated that there was approximately 6 to 7 inches of accumulated snow on the ground. (*Id*.) Mary added, "[i]t was cold it . . . had been snowing. I believe it – you know, it – it was February in Ohio. It was not nice out. It was cold." (*Id*. at 363.) Given the weather conditions, Mary was appropriately attired, wearing a winter coat and snow boots. (*Id*. at 364-65.)

She entered the store through the Misses Department. As she passed through the first of two sets of double doors, Mary wiped her feet on a mat in the vestibule area. She passed through the second set of doors and headed for the Jewelry Department where she exchanged an item she had previously purchased. (*Id*. at 365.) She does not remember seeing any signs posted alerting customers that the floors were wet, but a store manager working the day of the accident indicated that signs had been placed at the store's entrances.[4] An incident report prepared following the accident provided that:

> On that day, we had wet floor signs posted at both entrances. In fact, they had been there several days due to amount [sic] of snow and puddles because of people's boots. We also had dry mops at both entrances in order to frequently mop the floor. We would mop about every 15 min. The maintenance staff would mop, plus the cashiers, and even the managers.

(Doc. No. 21-3 at 255; Doc. No. 20-1 (Deposition of Store Manager Christina Bussan ["Bussan Dep."]) at 16-17[5], 24.)

After completing her jewelry exchange, Mary continued to shop. She tried on a couple of shirts, settled on purchasing a shirt and scarf, and headed for the registers in front of the doors

---

[4] Mary testified that she did not remember seeing any "wet floor" signs that day, but conceded that she could not say definitively that the signs were not present. (M. Kallmeyer Dep. at 365-66, 369-70.) In any event, the presence of such signs is immaterial to the Court's resolution of Kohl's summary judgment motion.

[5] Because of the format of the Bussan deposition transcript—four pages per electronic sheet—the references to this deposition are to the page numbers assigned by the transcribing court reporter.

she originally entered to check out. While waiting in line, Mary observed a puddle of water near another customer who was at the cash register. (M. Kallmeyer Dep. at 367, 371.) Mary believed that the source of the water was the customer's boots. (*Id*. at 371-72.) When the customer had completed her transaction, Mary approached the register and advised the clerk "There's a puddle of water right down here[.]" (*Id*. at 375.) According to Mary, the clerk said "Okay" and "then . . . proceeded with [Mary's] transaction. She didn't hand [Mary] a paper towel or come around or call maintenance. She just proceeded with [Mary's] transaction." (*Id*.)

Mary estimates that it took a few minutes for the clerk to complete Mary's transaction. (*Id*. at 376.) After she received her "Kohl's Cash" and her receipt from the clerk, Mary took between three and five steps toward the exit before she slipped in a puddle of water and fell, sustaining multiple injuries. (*Id*. at 376-77.) Mary testified both that she did not see the puddle prior to her fall and that it was not the same puddle that she had alerted the store clerk to moments before. (*Id*. at 377-79, 381, 383.) Further, Mary was not looking down at the floor as she attempted to exit the store because she was looking at her keys and gloves. (*Id*. at 389-92.) When asked why she did not look down immediately after observing a puddle tracked in by a customer's boots, Mary explained:

> I guess I – I was just leaving. I – I mean, I'd done my transaction. I don't even think I was thinking about oh, gosh, could there be more water. I wasn't – that wasn't my mindset.
>
> It was – I had told her about the water. I thought I'd, you know, done my job there as far as a – you know, and did my transaction and was thinking, okay, I'm going home now. I wasn't thinking oh, gosh, I got to look for more water. It wasn't my mindset.

(*Id*. at 390-91.)

Within 10 to 20 minutes after her fall, Mary was taken by ambulance to the hospital.

3

While she was waiting for the ambulance, a customer showed Mary a puddle of water on the floor near where she fell. (*Id.* at 399.) Mary informed the patron that she had just advised the store clerk about another puddle nearby. (*Id.*) In the fall, Mary sustained injuries to her right knee, one arm, her forehead, and nose. (*Id.*)

On February 15, 2017, the Kallmeyers brought suit against Kohl's and several John Doe defendants in the Summit County Court of Common Pleas.[6] (Doc. No. 1 (Complaint) at 7.) The complaint contains two counts: one for negligence and another sounding in loss of consortium. Kohl's timely removed the action to federal court, on February 21, 2017, on the basis of diversity jurisdiction. Following discovery, Kohl's moved for summary judgment.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

---

[6] The Kallmeyers failed to identify any John Doe defendants or otherwise amend the pleadings to add additional parties, and the time to do so has passed.

4

testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-

moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.* (citation omitted).

### III. DISCUSSION

Under Ohio law, "in order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 423 N.E.2d 467, 469 (Ohio 1981) (citing *Feldman v. Howard*, 226 N.E.2d 564, 567 (Ohio 1967)). The duty owed by a landowner to an entrant depends on the entrant's status. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996) (citation omitted). Here, there is no dispute that Mary was a Kohl's business invitee. "A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985) (citing *Campbell v. Hughes Provision Co.*, 90 N.E.2d 694, 695 (Ohio 1950)). "A shopkeeper is not, however, an insurer of a customer's safety." *Id.* Further, "a premises-owner owes no duty to persons entering [the] premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1089 (Ohio 2003) (citing *Sidle v. Humphrey*, 233 N.E.2d 589, ¶ 1 syllabus (Ohio 1968)). Rather, these dangers "serve as their own warning[.]" *Kintner v. ALDI, Inc.*, 494 F. Supp. 2d 811, 815 (S.D. Ohio 2007) (citing *Armstrong*, 788 N.E.2d at 1089). Businesses may assume that "'persons entering the premises will discover those dangers and take

appropriate measures to protect themselves.'" *McGuire v. Sears, Roebuck & Co.*, 693 N.E.2d 807, 809 (Ohio Ct. App. 1996) (quoting *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992) (further citation omitted)).

"Open and obvious" dangers are not hidden from view or undiscoverable upon ordinary inspection. *See Kirksey v. Summit Cty. Parking Garage*, No. Civ. A. 22755, 2005 WL 3481536, at *3 (Ohio Ct. App. Dec. 21, 2005) (citations omitted). The invitee need not have actually observed the dangerous condition, provided that the condition could have been observed. *See Hissong v. Miller*, 927 N.E.2d 1161, 1166 (Ohio Ct. App. 2010); *Smith v. Kroger Co.*, No. CA2010-09-233, 2011 WL 1458667, at *2 (Ohio Ct. App. Apr. 18, 2011) (collecting cases); *Kirksey*, 2005 WL 3481536, at *3. Accordingly, the court employs an objective standard to determine whether "the condition is observable." *Kirksey*, 2005 WL 3481536, at *3 (citation omitted). The focus of this analysis is "the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong*, 788 N.E.2d at 1091. Ohio courts have found that no duty existed in cases where the plaintiff did not notice the condition until after he or she fell, but could have seen the condition if he or she had looked. *Kirksey, supra* (internal citations omitted). Moreover, it is appropriate to decide the open and obvious nature of a hazard on summary judgment, "provided there are no genuine issues of material fact." *Martin v. Giant Eagle, Inc.*, No. 13AP-809, 2014 WL 2809258, at *5 (Ohio Ct. App. June 19, 2014) (citation omitted); *see Parsons v. Lawson Co.*, 566 N.E.2d 698, 700 (Ohio Ct. App. 1989).

A robust line of cases has developed in Ohio addressing open and obvious hazards created by water, slush, or snow tracked onto a premises by patrons. "In such instances, the Supreme Court of Ohio has ruled that 'no liability attaches to a store owner or operator for injury

to a patron who slips and falls on the store floor which has become wet and slippery by reason of water and slush tracked in from the outside by other patrons.'" *Haffey v. DeBartolo Corp.*, No. 1-91-18, 1991 WL 271727, at *1 (Ohio Ct. App. Dec. 20, 1991) (quoting *Boles v. Montgomery Ward & Co.*, 92 N.E.2d 9, ¶ 2 syllabus (Ohio 1950)); *see Martin*, 2014 WL 2809258, at *6 (collecting Ohio cases).

In the context of hazardous conditions created by rain storms, the Ohio Supreme Court observed that "[e]verybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and [everyone] knows that a damp floor is likely to be a little more slippery than a dry floor." *S.S. Kresge Co. v. Fader*, 158 N.E.174, 175 (Ohio 1927). The court in *Kresge* reasoned that "[i]t is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail." *Id*.

The holding and rationale of *Kresge* continues to serve as the standard by which cases involving weather-related slip and fall cases are judged—including those involving falls that are caused by snow tracked into a store. *See, e.g., Martin*, 2014 WL 2809258, at *7 (relying on *Kresge*, among authority, to find customer should have been aware of the possibility that the floors might be wet because of the weather conditions); *Keiser v. Giant Eagle, Inc*., 658 N.E.2d 1115, 1118 (Ohio Ct. App. 1995) ("Based upon these series of slip and fall cases [beginning with *Kresge*] which addressed the situation where water is tracked into a store, it is clear that the trial court properly granted summary judgment in favor of [the store owner] in the present case.");

8

*Haffey*, 1991 WL 271727, at *2 (affirming the trial court's grant of summary judgment to the mall owner, noting that there was no "evidence to prove the water was from any source other than mall patrons carrying snow and ice into the mall on their shoes[]"); *Lewis v. Kroger Co.*, No. 82AP-230, 1983 WL 3616, at *2-4 (Ohio Ct. App. July 19, 1983) (water on floor caused by snowy conditions was an "open and obvious" hazard for which the store owner was not responsible).

Based upon the well-established Ohio law regarding weather-related hazards, Kohl's posits that it is not liable for Mary's injuries. Mary should have been aware that snow and water would be tracked into the store during inclement weather and should have exercised the requisite degree of care to avoid any resulting dangerous conditions. In fact, Kohl's notes that Mary was actually aware of the potential for slippery floors, having, moments before, alerted a clerk to another puddle on the store floor.

Notwithstanding this clear line of cases, the Kallmeyers insist that the slippery condition of the floor was not "open and obvious" because the puddle was clear and not easily visible. In support, they cite *Middleton v. Meijer, Inc.*, No. 23789, 2010 WL 2706303 (Ohio Ct. App. July 9, 2010). *Middleton* is inapposite. There, the plaintiff slipped on clear laundry detergent that had spilled and blended into the light colored floor. In finding that the store breached its duty to the patron, the appellate court distinguished the case of a hazardous condition caused by a foreign substance that a customer does not expect to find from one occurring naturally. Specifically, the court observed:

> Although store owners have no duty to protect its [sic] patrons from tracked-in water from snow or rain near the entrance to the stores, they do have a duty to protect patrons from clear substances on their store floors that are not open and obvious dangers. We believe a jury could find from the plaintiff's evidence that

9

>   the laundry detergent was not an open and obvious danger to the plaintiff
>   Middleton . . . .

*Id*. at *4. If anything, *Middleton* reinforces the holding and rationale of *Kresge* that patrons are expected to be on alert when dangerous conditions can be anticipated, such as when inclement weather creates the obvious potential for slippery floors.[7] *See Smith*, 2011 WL 1458667, at *2-3 (notwithstanding the fact that the puddle was "clear water on a shiny, tile floor" there was nothing preventing plaintiff from seeing it).

Further, the undisputed facts do not support Mary's position. Mary was aware of the inclement weather and the snow on the ground when she entered the store, and she was able to see another puddle mere feet from where she fell. She also testified that she believed that this other puddle was created by tracked-in snow. Moreover, while Mary did not see the puddle until after she fell, there was nothing preventing her from discovering it. (M. Kallmeyer Dep. at 392-94.) *See Kirksey, supra*; *see, e.g., Smith*, 2011 WL 1458667, at *3 ("the hazard in aisle two was not hidden from view or concealed, and was discoverable by ordinary inspection[]"). That she was focused on finding her keys and putting on her gloves does not change the fact that the puddle was discoverable.[8] In fact, Mary complains that, had the register clerk immediately sent

---

[7] In much the same way, the Kallmeyers' other cited case—*Elson v. Wal-Mart Stores, Inc.*, No. 2:15-cv-2500, 2017 WL 1546883 (S.D. Ohio Apr. 28, 2017)—is also easily distinguishable. The plaintiff in *Elson* tripped and fell on dark colored berries, near a black rug, on a dark marble floor. *Id*. at *1. Unlike water tracked in on a customer's boots during inclement weather, patrons are not expected to anticipate the presence of berries on a shop floor, and Ohio case law recognizes the distinction.

[8] Mary initially testified that there was nothing obstructing her view, but then qualified her response by explaining that the position of her coat and bag prevented her from seeing the floor. (M. Kallmeyer Dep. at 392.) Neither her coat nor her bag can serve as "attendant circumstances" that would establish an exception to the "open and obvious" doctrine as they neither were dangers created by Kohl's nor did they unreasonably enhance the danger associated with slippery floors. *See Martin*, 2014 WL 2809258, at *7 ("[A]ttendant circumstances are facts that significantly enhance the danger of the hazard. Furthermore, the attendant circumstance must be an unusual circumstance of the property owner's making.") (quotation marks and citations omitted). For these same reasons, Mary's preoccupation with her keys and gloves cannot serve as an attendant circumstance.

for a maintenance employee, that employee "would have noticed the other puddle."[9] (M. Kallmeyer Dep. at 388.) Mary simply cannot have it both ways.

Equally unavailing is Mary's attempt to distinguish the controlling line of cases involving weather-related hazards based on the location of the accident. While Mary highlights the fact that her accident did not take place directly in front of the entrance, the governing case law does not draw such a distinction. In fact, the court in *Haffey* rejected a similar argument premised on the location of the patron's fall relative to the store's entrance. Finding the fact that the puddle of water was located in a checkout lane—and not by the door—"irrelevant," the court stressed that "[t]he location of the puddle does not require the application of a different principle of law. No matter where the puddle was located, the degree of care owed by [the mall owner] to mall patrons was still one of ordinary care as established by the Supreme Court in *Kresge, supra*." *Haffey*, 1991 WL 271727, at *2 (puddle was twenty-five to fifty feet inside the mall concourse) (citation omitted); *see, e.g., Keiser*, 658 N.E.2d at 1116-18 (customer who slipped and fell on water located near a cash register could not recover from the store where the only evidence regarding the origin of the puddle of water was that "it was tracked in from outside").

While the puddle at issue in this case was not located immediately inside the entrance, it was within feet of the door. The video from the store's surveillance camera shows regular foot traffic from customers walking near where Mary fell, and it was reasonable for patrons to believe that this traffic would have the effect of creating wet and slippery floors.[10] (M. Kallmeyer Dep.

---

[9] Moreover, still shots from the store's surveillance camera that were reproduced in the parties' briefing reveal no obstructions or ways in which the puddle could have been concealed. (Reply at 513-14.)

[10] The transcript from Mary's deposition reflects that the video from the store's surveillance camera was played during the deposition. Mary agreed that the video depicted a number of patrons walking by the general area where she fell. (M. Kallmeyer Dep. at 450-53.) Further, Mary agreed that the store was "kind of busy" at the time she was there. (*Id*. at 453.)

at 464 [recognizing that if there is snow outside and the ground is wet customers can track snow into the store]; *Id*. at 391 [acknowledging that it was "possible" that every Kohl's customer who entered the store that day could have tracked water into the store].) Under these circumstances, the Court cannot find that the location of the puddle—near but not directly in front of the entrance or exit—changes the analysis or warrants a different result.

Of course, even if the facts did not inescapably point to the presence of an "open and obvious" hazard that Mary should have anticipated, Kohl's would still be entitled to judgment in its favor as a matter of law. Mary complains that Kohl's had "superior knowledge" as to the existence of the hazard because she had pointed out another puddle to the clerk. A business owner has "the duty to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor which a patron should not be expected to discover or protect himself against." *Jackson v. Kings Island*, 390 N.E.2d 810, 812 (Ohio 1979). "Accordingly, the proprietor's duty is normally predicated upon his superior knowledge of a dangerous condition on his premises." *Id*. "Constructive notice cannot be proved without a factual basis that the hazard existed for a sufficient time to enable the exercise of ordinary care." *Alvarez v. Nat'l City Bank*, No. 24292, 2009 WL 249785, at *2 (Ohio Ct. App. Feb. 4, 2009) (citations omitted).

Here, it is undisputed that the puddle to which Mary alerted the clerk was not the same puddle that caused her accident. As such, a warning about a different puddle could not have served to put Kohl's on notice as to a separate hazard. *See Balcar v. Wal-Mart Store No. 2726*, No. 12AP-344, 2012 WL 6670422, at *5 (Ohio Ct. App. Dec. 20, 2012) (notice of spill in an adjacent aisle did not provide store with actual or constructive notice of the separate hazard that caused plaintiff's fall); *Davis v. Kmart Corp*., No. 4:10CV2127, 2011 WL 4730523, at *5 (N.D.

Ohio Oct. 7, 2011) (superior knowledge could not be imputed to store where there was no evidence that the source of the spilled milk that caused the plaintiff's fall was related to the spill another customer had previously reported). Nor can it be said that Kohl's had superior knowledge of the weather conditions that day or the potential for tracked in water, especially given the fact that Mary had only moments before seen another puddle. *See Martin*, 2014 WL 2809258, at *8 ("We find the record devoid of any evidence demonstrating that [the store] possessed knowledge superior to that of [the patron] of either the inclement weather conditions or the condition of the lobby floor with regard to the tracked in water.") Finally, there is nothing in the record that would suggest how long the hazardous condition had existed, let alone evidence that it existed for a sufficiently long period of time such that Kohl's should have discovered and addressed it. *See Combs v. First Nat'l Supermarkets, Inc*., 663 N.E.2d 669, 671 (Ohio Ct. App. 1995) ("evidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care") (citation omitted).

Under the applicable Ohio law, the uncontroverted facts demonstrate that Kohl's was not negligent in regard to a puddle of water on the store floor in the area where Mary slipped and fell. There is no evidence that the puddle was caused by anything other than snow and slush tracked into the store by customers. The puddle was an open and obvious hazard of which it cannot be said Kohl's had superior knowledge. Kohl's is entitled to summary judgment on the Kallmeyers' negligence claim and loss of consortium claim, the latter of which is derivative of the negligence claim. *See Bowen v. Kil-Kare, Inc*., 585 N.E.2d 384, 392 (Ohio 1992) ("[W]e recognize that a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily

injury.").

## IV. Conclusion

For all of the foregoing reasons, Kohl's motion for summary judgment is **GRANTED**. This case is dismissed.

**IT IS SO ORDERED**.


Dated: April 23, 2018

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**